FILED

2010 Aug-31  PM 02:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KAREN EVANS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:10-cv-0040-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION

Plaintiff Karen Evans ("Plaintiff") brings this action pursuant to Section

205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final

adverse decision of the Commissioner of the Social Security Administration

("SSA").  This Court finds that the Administrative Law Judge's ("ALJ") decision -

which has become the decision of the Commissioner - is supported by substantial

evidence.  Therefore, for the reasons elaborated herein, the Court **AFFIRMS** the

decision denying benefits.

## I. Procedural History

Plaintiff filed her applications for disability insurance benefits and for

Supplemental Security Income ("SSI") benefits under Titles II and XVI,

respectively, of the Social Security Act ("the Act") on January 31, 2006, (R. 75-

78, 79-83), alleging a disability onset date of November 1, 2005.[1]  (R. 75; 79).

After an initial denial, (R. 58), Plaintiff requested a hearing before the ALJ on

May 19, 2006, (R. 67), which was held on March 18, 2008, in Decatur, Alabama.

(R. 23-47).[2]  On March 27, 2008, the ALJ denied the claim. (R. 7-22).  This denial

became the final decision of the Commissioner of the SSA when the Appeals

Council refused to grant review, and, therefore, a proper subject of this court's

review.  (R. 1-4).  Having timely pursued and exhausted her administrative

remedies, Plaintiff filed this action for judicial review pursuant to section 1631 of

the SSA, 42 U.S.C. § 1383(c)(3).

At the time of the hearing, Plaintiff was 32 years old with an eleventh grade

education.  (R. 53).  Plaintiff has not engaged in substantial gainful activity since

August 15, 2006, the alleged onset of her disability.  (R. 12, 47, 84).  Her past

---

[1] Plaintiff originally alleged a disability onset date of November 1, 2005, but subsequently amended it to August 15, 2006.  (R. 50, 85).

[2] A hearing commenced on July 5, 2007, but was interrupted due to Plaintiff's illness and reconvened on March 18, 2008.  (R. 16, 48).

relevant work was as a cashier.  (R. 17, 93).  Plaintiff's disability report alleges

she suffers from psuedo-seizures ("blackouts"), carpal tunnel syndrome,

migraines, obesity, and depression/anxiety.  (R. 92).

## II.  Standard of Review

The only issues before this court are whether the record reveals substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.

Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied

correct legal standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's findings are conclusive if supported

by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.

1990).  The district court may not reconsider the facts, reevaluate the evidence, or

substitute its judgment for that of the Commissioner; instead, it must review the

final decision as a whole and determine if the decision is reasonable and supported

by substantial evidence.  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233,

1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a

preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by

substantial evidence, this court must affirm the Commissioner's factual findings

even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review

of the ALJ's findings is limited in scope, the court also notes that the review "does

not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must be disabled, which is

defined as "the inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairments which can be expected

to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C.

§ 416(i).  A physical or mental impairment is "an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrated

by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C.

§ 423(d)(3).

Determination of disability under The Act requires a five step analysis.  20

C.F.R. § 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the
national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); *accord McDaniel v. Bowen*,

800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One

and Two, she will automatically be found disabled if she suffers from a listed

impairment.  If the claimant does not have a listed impairment but cannot perform

her past work, the burden shifts to the Secretary to show that the claimant can

perform some other job."  *Pope,* 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d

1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of

showing that such work exists in the national economy in significant numbers.  *Id*.

## IV.  The ALJ's Decision

The ALJ determined that Plaintiff's "severe combination of impairments

[of] pseudo-seizures, panic attacks, and major depressive disorder" met Steps One

and Two.[3]  (R. 12).  In Step Three, the ALJ found that Plaintiff's impairments

neither met nor equaled the requirements for any listed impairment.  (R. 13).

---

[3] Additionally, the ALJ found that Plaintiff is obese and has a "history of bilateral ankle fractures."  (R. 12).

In Step Four, the ALJ found that Plaintiff "has the residual functional capacity to perform a full range of simple routine repetitive light work with occasional contact with supervisors." (R. 13). However, the ALJ opined that she is "unable to perform any past relevant work" as a cashier, which was classified as light, unskilled work, because it "exceeds the claimant's residual functional capacity." (R. 17).

Lastly, the ALJ considered the Plaintiff's age, education, work experience, residual functioning capacity, and impairments, and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 18). Based on the foregoing, the ALJ determined that Plaintiff is not disabled. (R. 19).

## V.  Analysis

A.    Seizures

Plaintiff initially alleged disability due to seizure disorder. (R. 51, 92). However, in the March 18, 2008, hearing before the ALJ, her attorney of record at that time[4] confirmed that Plaintiff withdrew seizure disorder as a basis of her disability. (R. 26). Nevertheless, the ALJ included psuedo-seizures as part of

---

[4] At the time of the hearing, Plaintiff was represented by Rodney Baines.  (R. 23). Plaintiff is currently represented by Darryl Hunt.  *See* doc. 1.

Plaintiff's severe combination of impairments, (R. 12), and concluded that the

medical evidence did not support the presence of valid seizure disorder.  (R. 16).

Plaintiff contends that the "ALJ states incorrectly [ ] that examinations and EEGs[5]

have failed to report the presence of valid seizure disorder."  Doc. 8 at 14; *see* R.

at 16.

The ALJ's decision is supported by substantial evidence.  Specifically,

Plaintiff's CT scans on July 29, 2006, (R. 228), July 10, 2007, (R. 434), and July

27, 2007, (R. 454), and brain MRI on January 18, 2006, (R. 170), were "normal."

Likewise, Plaintiff's EEGs on January 12, 2006, (R. 153), and August 8, 2006,

(R. 291), were "normal."  Neurologist, Dr. Stephen Suggs, interpreted the January

12, 2006, EEG and commented that a "[n]ormal EEG does not rule out a seizure

disorder.  Clinical correlation is advised."  (R. 153).  Dr. Suggs noted in his

August 3, 2006, evaluation of Plaintiff that she was "negative for diagnosed

seizures."  (R. 285).

A second doctor, Dr. E.G. Norwood, interpreted the August 8, 2006, EEG

and commented that "[t]he absence of epileptiform discharges on a single EEG

does not exclude a diagnosis of seizures, but there is nothing on this record to

---

[5] Electroencephalogram ("EEG") is a test that detects abnormalities related to electrical activity in the brain.

establish the presence of a seizure disorder." (R. 291).  Dr. Norwood saw Plaintiff

again on August 15, 2006, when Plaintiff had a 24 hour ambulatory EEG.  (R.

290).  Dr. Norwood reported the following findings: "Epileptiform discharge is

seen with left hemisphere focus.  No electrographic seizure was recorded. [ ]

Abnormal EEG because of left hemisphere epileptiform discharge.  This would

correlate with her clinical seizure disorder." *Id*.

While Dr. Norwood's report of August 15, 2006, data may be suggestive, it

is not conclusive.  Considering the evidence in total (including the normal scans

and Plaintiff's decision to abandon her claim for seizures (R. 26)), the ALJ's

decision that valid seizure disorder is not present is supported by substantial,

objective medical evidence.

B.      Mental Health Impairments

Next, Plaintiff argues that the ALJ failed to "properly consider[] mental

health issues in the disability determination."  Doc. 8 at 14.  The ALJ considered

major depressive disorder, and substantial evidence supports his decision to deny

benefits.

Plaintiff was seen by Dr. Piotr Zieba at Alabama Psychiatric Services, PC

on September 5, 2007.  (R. 483).  Dr. Zieba opined that Plaintiff suffered from

major depressive disorder, panic disorder with agoraphobia, and scored her Global

Assessment of Functioning[6] ("GAF") of 50, which indicates "serious symptoms

OR serious difficulty in social, occupational, or school functioning."  *Id.*  Dr.

Zieba commented further that "the patient's functioning may be influenced by

taking Ativan and Lortab that probably she is used to taking more liberally than

needed in the home situation."  *Id.*

The ALJ gave Dr. Zieba's opinion "little weight," (R. 17), because a month

later on October 3, 2007, Dr. Gagan Dhaliwal evaluated Plaintiff and diagnosed

her with panic disorder and major depressive disorder, and scored her GAF as 60,

which indicates "moderate symptoms OR moderate difficulty in social,

occupational, or school functioning."  (R. 495).  Dr. Dhaliwal noted also that

Plaintiff 1) was able to relate to others, 2) was cooperative, 3) had good judgment,

and 4) had no suicidal or homicidal thoughts, but that her mood was "anxious."

(R. 494).

The ALJ included "major depressive disorder" in the combination of severe

impairments he considered, (R. 12), but determined that Plaintiff's psychiatric

evaluation and GAF score were "consistent with only moderate symptoms or a

---

[6] The American Psychiatric Association, Diagnostic and Statistical Manual of Mental
Disorders presents the Global Assessment of Functioning scale, which is widely used to score the
severity of psychiatric illnesses.

moderate impairment in social, occupation, or school functioning," (R. 15).[7]

Further, the ALJ found that "[a]lthough the claimant has been treated with

medications for psychological impairments, there is no indication her impairments

have resulted in significant limitations."  (R. 17).

Subsequent to the ALJ's decision, Plaintiff was hospitalized from July 21 -

29, 2009, due to a suicide attempt.  (R. 505-506).  Upon discharge, Plaintiff was

diagnosed with major depressive disorder with suicidal ideation, cluster B

personality disorder, and seizure disorder.  (R. 506).  She received a GAF score of

30, which indicates "behavior influenced by delusion or hallucinations OR serious

impairment in communication or judgment."  The discharge summary states also

that Plaintiff "was discharged in markedly improved condition without suicidal or

homicidal ideation or psychotic symptoms and anticipates following up in the

outpatient setting as described."  *Id*.

Considering the new evidence, the ALJ's opinion is supported by

substantial evidence.  Despite the major depressive disorder diagnosis, the record

does not establish that the impairment has severely limited Plaintiff's ability to

---

[7] It is also important to note that Plaintiff was sent for further psychiatric evaluation, but it appears that she did not follow through with getting treatment.  (R. 186, 483; *see* 284). Unfortunately, the record demonstrates that she seeks treatment primarily through emergency room visits at times of crisis, and has not sustained for any significant period of time continuity of treatment for her impairments.

function such that she is disabled.  Indeed, Dr. Dhaliwal determined that her

impairment caused only mild to moderate limitations.  (R. 497).  Likewise, Dr.

Robert Estock, who completed a psychiatric review on April 20, 2006, noted that

Plaintiff had anxiety and panic attacks, (R. 179), but that her degree of functional

limitation was mild to moderate, (R. 184), and her mental residual functional

capacity in all areas was either not significantly limited or moderately limited.  (R.

188).  Dr. Estock commented further that 1) there is "no [history of] psychiatric

[treatment] either outpatient or inpatient, 1/06 USD were positive for cocaine,

barbituates and benziod, claimant denied any current use of uncontrolled

substance, denies abuse, denies treatment, denies purchasing drugs but admits to

using cocaine a few times," (R. 186.), and 2) "Claimant is able to remember

locations and work like procedures.  She is able to understand, remember and

carry out short simply instructions.  She may have moderate difficulty handling

more detailed instructions but likely can handle even these if they are broken

down into simple 1-2 step tasks and she is given adequate rehearsal time,"

(R. 190).

    Considering the entire record, including the new evidence from July 21,

2009, the record does not establish that Plaintiff's impairments cause severe

limitations such that she is disabled.  Accordingly, the ALJ's decision is supported

by substantial evidence.

C.    The ALJ Fully Developed the Record

Plaintiff asserts that the ALJ "failed in his duty to develop the record according great weight to a consultative psychiatrist who honestly stated that he was basing his opinion on Plaintiff's self-report while discarding and ignoring the opinions of neurologist who stated that Plaintiff was disabled." Doc. 8 at 16-17. This argument lacks merit. Dr. Dhaliwal completed a Medical Source Opinion Form (Mental); question IV. states, "If drug and/or alcohol use is relevant to this case, please answer the following question. If drug or alcohol use were to stop, would there be any change in the above-stated limitations?" (R. 498). Dr. Dhaliwal checked "No," and wrote further, "based on self report." Therefore, Dr. Dhaliwal's comment qualified only question IV., rather than the entire report, and cannot serve as a basis to conclude that the ALJ failed to develop the record.

Plaintiff also argues that the ALJ failed to fully develop the record because he erroneously concluded "that he would not give Dr. Stephen Sugg's opinion any weight [because] there was no evidence to support Dr. Sugg's opinion." Doc. 8 at 17. Plaintiff was seen by Decatur Neurology on January 1, 2006, August 3, 2006, and August 18, 2006. (R. 284-89). In January 2006, Dr. Suggs commented that "the patient appears to have migraines and spells of uncertain etiology. She

certainly *could* have disability from her migraines and her spells.  They do seem to

be fairly severe."  (R. 289) (emphasis added).  While this was Dr. Suggs'

impression, neither this statement, nor the record, establishes that Plaintiff is

disabled.

On August 3, 2006, Plaintiff was seen by Dr. Norwood, who commented

that, 1) "she has a longstanding history of headache, recent constant headache for

about 8 months," 2) "[p]ast history of headache and more recent constant daily

headache.  This may be analgesic rebound associated with her Lortab use."  (R.

286-87).  On August 17, 2006, Plaintiff was seen again by Dr. Norwood, who

commented that, 1) her "[h]eadache has also been improved" and 2) they

"discussed potential role of caffeine in headache management and she will

moderate her caffeine intake very slowly."  (R. 284).

Other treatment reports indicate that Plaintiff's headaches are manageable.

On October 27, 2005, and January 19, 2006, Plaintiff's brain MRI was normal.

(R. 154, 170).  During Plaintiff's July 29, 2006, visit to Athens-Limestone

Hospital, her history of present illness indicated that she takes "Lortab for her

carpal tunnel and *occasional* migraines."  (R. 201).  On August 17, 2006,

Dr. Norwood reported that Plaintiff 1) "has been significantly improved,"

2) "[h]eadache has also been improved," and 3) is "currently off of all of her

medicines including Ativan, Klonopin, Xanax, Paxil, Lortab." (R. 284).  During

her most recent hospitalization on July 21, 2009, Plaintiff's discharge summary

indicated, "Neurologic:  no significant complaints." (R. 505).

Based on this record, the ALJ's decision to give Dr. Suggs' statement little

weight is supported by substantial evidence.  The objective medical evidence does

not establish that Plaintiff's migraines cause her to be disabled.  The ALJ was not

required to develop the record further because it contained sufficient evidence for

him to make an informed decision.  *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th

Cir. 2001).

## V.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination

that Plaintiff is not disabled is supported by substantial evidence, and proper legal

standards were applied in reaching this determination.  The Commissioner's final

decision is, therefore, AFFIRMED.  The court will enter a separate order in

accordance with the memorandum opinion.

Done the 31st day of August, 2010.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE